**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| | ) | |
| OLIVER ARMANDO LOPEZ PEREZ | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 1:26-cv-12268-IT |
| | ) | |
| ANTONE MONIZ, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PETITIONER'S**
**MOTION TO ENFORCE JUDGMENT**

## I.    INTRODUCTION

Despite this Court's June 1, 2026 Order (ECF No. 7) that Petitioner be provided with a constitutionally-adequate bond hearing, Petitioner Oliver Armando Lopez Perez ("Petitioner" or "Mr. Lopez Perez") was unlawfully denied bond and remains detained by Respondents at the Plymouth County Correctional Facility. On June 5, 2026, Immigration Judge ("IJ") Luciana Dubuc denied Petitioner bond in proceedings that did not comply with the Due Process Clause of the Fifth Amendment of the U.S. Constitution, the standards established in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), and this Court's Order. *See* Exh. 1, Bond Order; Exh. 2, Bond Hearing Transcript[1]; ECF. No. 7.

Mr. Lopez Perez entered the United States seeking safety in approximately 2021, when he was nineteen years old. He has remained here ever since. Mr. Lopez Perez has a pending I-589 application for asylum based on his fear of criminal groups who threatened his life in

---

[1] Petitioner's bond hearing transcript was prepared by Rule 3:03 Student Attorney Jane Holmes, based on the digital audio recording of the June 5, 2026, hearing.

Guatemala based on his political opinion and indigenous identity. Exh. 3, I-589 Application. Mr. Lopez Perez reasonably fears that if he is removed to Guatemala, he will be killed.

Prior to his detention, Mr. Lopez Perez was residing and working in Chelsea, Massachusetts for two construction companies. Exh. 4, Petitioner's Bond Evidence, Tab A at 005; Exh. 4, Tab G-I. He has a stable residence with his long-term partner, Jakelyn, and their two year old U.S. citizen son, Ethan. Exh. 4, Petitioner's Bond Evidence, Tabs C-F. Mr. On May 15, 2026, Mr. Lopez Perez was detained by Immigration and Customs Enforcement ("ICE") when officers mistook him for another individual that they were targeting for enforcement. Exh. 4, Petitioner's Bond Evidence, Tab A at 005; Exh. 5, DHS Bond Evidence at 2. Mr. Lopez Perez was severely injured during this arrest. Exh. 4, Petitioner's Bond Evidence, Tab A at 005. Mr. Lopez Perez has had no prior encounters with law enforcement. Exh. 4, Petitioner's Bond Evidence, Tab A at 005; Exh. 5, DHS Bond Evidence at 3.

Despite Mr. Lopez Perez's demonstrated community ties, eligibility for immigration relief, access to *pro bono* legal counsel, lack of criminal history, and medical challenges following his ICE arrest, the IJ denied Mr. Lopez Perez bond on the grounds that he is a flight risk. Exh. 1, Bond Order. Her reasoning rested solely on the fact that Mr. Lopez Perez allegedly failed to comply with law enforcement during his ICE arrest by exiting the passenger side of his vehicle. Exh. 2, Bond Hearing Transcript. As such, the IJ found Mr. Lopez Perez's risk of flight was so high that no amount of bond could ameliorate such risk and outright denied the opportunity for release. Exh. 1; Exh. 2.

The IJ's denial of bond failed to comply with the procedural protections required under *Hernandez-Lara* and the Due Process Clause, including with respect to the allocation of burdens of proof and consideration of less restrictive alternatives to detention. **Therefore, Petitioner**

**respectfully requests that this Court enforce its Order and grant his immediate release.** In the alternative, Petitioner requests that this Court, pursuant to its equitable powers, release him on alternatives to detention such as GPS monitoring, hold its own bond hearing, instruct the Immigration Court to hold a new bond hearing that complies with this Court's original Order, or grant any other relief the Court deems just and proper.

## II.   FACTUAL AND PROCEDURAL HISTORY

### Petitioner's Life in the United States and Procedural History

Mr. Lopez Perez is a native and citizen of Guatemala. Mr. Lopez Perez entered the United States in approximately 2021, when he was nineteen years old, after fleeing Guatemala due to threats and violence based on his political opinion and indigenous identity. Exh. 3, I-589 Application.

Mr. Lopez Perez has worked hard to support his family and positively contribute to his community since his arrival to the United States. Mr. Lopez Perez has many community connections as evidenced by the eight individuals who provided letters - including a U.S. citizen sponsor - in support of his bond application. Exh. 4, Petitioner's Bond Evidence, Tabs C-M. Mr. Lopez Perez has been in the United States since he was nineteen years old, and has been living in Chelsea, Massachusetts with his long-term partner, Jakelyn, since approximately 2022. Exh. 4, Petitioner's Bond Evidence, Tab A at 005; Exh. 4, Tab C. In December 2023, Mr. Lopez Perez and Jakelyn welcomed their first child, Ethan, who is a U.S. citizen. Exh. 4, Tabs C-F. Petitioner and Jakelyn have spent the last two and a half years caring and providing for him. Exh. 4, Tabs C-F. Petitioner is now 24 years old, and works at two different construction companies. Exh. 4, Tabs G, I. He has completed an OSHA training for work, and is described by the president of

3

J&B Flooring as "hardworking, honest, and dependable." Exh. 4, Petitioner's Bond Evidence, Tab A at 005, Tab G at 025; Exh. 4, Tab H. .

Mr. Lopez Perez has a stable residence in Chelsea with his family at 114 Congress Avenue. Exh. 4, Petitioner's Bond Evidence, Tab D at 015. His friends and family describe him as a "loving and responsible father," an "honest young man . . . [who] treats others with kindness and consideration," and "someone people naturally appreciate and trust." Exh, 3, Petitioner's Bond Evidence, Tab C at 013, Tab J at 034, Tab K at 037. These letters demonstrate his deep connections to his community and the positive impact he has on those around him.

Mr. Lopez Perez has no criminal history or prior encounters with law enforcement. Exh. 4, Petitioner's Bond Evidence, Tab A at 006; Exh. 5, DHS Bond Evidence at 3. On May 15, 2026, Mr. Lopez Perez was arrested by the Department of Homeland Security ("DHS") when he was mistaken for another individual that officers were targeting for enforcement. Exh. 4, Petitioner's Bond Evidence, Tab A at 005; Exh. 5, DHS Bond Evidence at 2.  Mr. Lopez Perez recalls that officers surrounded his car and yelled another person's name. Exh. 4, Petitioner's Bond Evidence, Tab A at 005. The officers primarily spoke to him in English, a language he does not speak, and he recalls that one of them told him that "nobody can save you." Exh. 4, Petitioner's Bond Evidence, Tab A at 005. Mr. Lopez Perez was terrified. In DHS's evidence, an uncorroborated I-213 narrative describes that Petitioner attempted to exit out the passenger side of his vehicle when instructed to get out of his car by officers. Exh. 5, DHS bond evidence at 2. Mr. Lopez Perez was tackled by agents once he exited the car, and sustained injuries to his ankle, knee and back. *Id.* During his arrest, Mr. Lopez Perez was forthcoming with officers about his identity and immigration status. *Id.*

4

Since his arrest, Petitioner has remained in Respondents' custody at the Plymouth County Correctional Facility in Plymouth, Massachusetts. Mr. Lopez Perez is now in removal proceedings before the Chelmsford Immigration Court. He has since submitted an I-589 application for asylum to the Immigration Court based on his fear of return to Guatemala, and he is currently scheduled for a master calendar hearing scheduled in his removal proceedings for June 25, 2026. Exh. 3, I-589 Application.

### Petitioner's Bond Hearing

On June 5, 2026, the Chelmsford Immigration Court held a bond hearing in Petitioner's case pursuant to this Court's Order. *See* ECF No. 7. In advance of the hearing, Mr. Lopez Perez, through *pro bono* counsel, submitted significant evidence documenting his lack of flight risk. Exh. 4, Tabs A-T. Such evidence included a detailed sworn declaration from Mr. Lopez Perez attesting to his years of residence and employment in the United States, his familial and community ties in Chelsea, and the injuries he suffered during his ICE arrest. Exh. 4, Tab A at 005-006. The declaration also discussed his genuine fear of returning to his home country and his lack of criminal history. *Id.*

Mr. Lopez Perez provided letters of support from his U.S. citizen sponsor, his partner, and many coworkers and friends. Exh. 4, Tabs B, C, G, I-M. Mr. Lopez Perez's U.S. citizen sponsor also provided proof of her financial means to support Mr. Lopez Perez through the pendency of his removal proceedings and expressed her commitment to supporting him in attending all immigration appointments. *Id.* at Tab B.

Petitioner also submitted a copy of his lease at his fixed address, confirming his residence in Chelsea, Massachusetts, as well as his son's birth certificate demonstrating that he was born in Chelsea in December 2023. *Id* at Tabs D-E. In addition, Mr. Lopez Perez submitted photos with

his family, screenshots of videos of the work he has completed through his construction job, and his OSHA certificate. *Id* at Tabs F-H. Mr. Lopez Perez submitted seven additional letters of support from friends, coworkers and family attesting to his kindness, his work ethic, his honesty, his trustworthiness, and his love and sense of responsibility for his family. *Id.* at Tabs B, C, G, I-M.

In opposition to Mr. Lopez Perez's request for bond, DHS solely submitted an I-213 record detailing Mr. Lopez Perez's immigration history and his ICE arrest. Exh. 5, DHS Bond Evidence.

At the bond hearing, DHS argued that Mr. Lopez Perez posed a flight risk because he "attempted to evade arrest by ICE agents" "by exiting the passenger side of the vehicle." Exh. 2, Bond Transcript at 2. Petitioner's counsel explained the circumstances surrounding his arrest, namely that on the day of Mr. Lopez Perez's arrest, the ICE agents were searching for another individual, that the officers spoke to the Petitioner in English, and that an officer threatened him during that encounter. Exh. 2, Bond Transcript at 2; Exh. 4, Tab A at 005; Exh. 5, DHS Bond Evidence at 2. Mr. Lopez Perez was terrified and panicked, as this was his first encounter with law enforcement or ICE. Exh. 2, Bond Transcript at 2-3. Counsel explained that any brief attempt to avoid the officers, one of whom yelled "nobody can save you," was directly linked to Mr. Lopez Perez's fear and confusion as he faced an overwhelming onslaught of officers yelling words he did not understand, and a name that was not his. Exh. 2, Bond Transcript at 2-3. Further, counsel explained that Mr. Lopez Perez was forthcoming with officers as to his identity and legal status as soon as he was apprehended. Exh. 2, Bond Transcript at 3.

Petitioner's counsel also described Mr. Lopez Perez's equities in the United States - including his eligibility for immigration relief, his family ties, his stable employment and address, and his multiple letters of support. Exh. 2, Bond Transcript at 2-3.

The IJ denied bond, finding DHS had met its burden of proving Mr. Lopez Perez posed a flight risk and "there is no bond amount that will mitigate his risk of flight." Exh. 1, Bond Order. The IJ based this decision on the fact that he "tried to flee when officers tried to apprehend him" and therefore posed a flight risk. Exh. 2, Bond Transcript at 3-4.

In making this decision, the IJ focused on an isolated moment of panic in which she herself acknowledged that Petitioner was confused, and failed to meaningfully credit all other positive factors presented in favor of Petitioner's release.

## III.   ARGUMENT

### A. This Court has Jurisdiction to Decide Petitioner's Motion to Enforce

Federal district courts have jurisdiction to order the release of any person who is held in custody in violation of the laws or Constitution of the United States. 28 U.S.C. § 2241(c). "A district court retains jurisdiction to 'review compliance with its earlier order conditionally granting habeas relief,'" and federal courts have repeatedly considered whether an immigration judge complied with its prior order requiring that the immigration judge hold a constitutionally adequate bond hearing. *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 142 (D. Mass. 2019) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)); *see also Vacas Espinoza v. Moniz*, No. 26-11472-DJC, Doc. No. 15 (D. Mass. June 17, 2026); *Montesinos Olivar v. Wesling*, No. 26-11102-ADB, Doc. No. 14 (D. Mass. May 7, 2026); *Loja Loja v. Moniz*, No. 26-11826-MJJ, Doc. No. 10 at 5-6 (D. Mass. April 28, 2026); *Li v. Wesling,* 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar.

7

31, 2026); *Costa v. McDonald*, No. 25-CV-13469-AK, 2026 WL 371198 at *4 (D. Mass. Feb. 10, 2026); *Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691, at *1 (D.R.I. Feb. 9, 2026); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025); *Mendez Trigueros v. Guadian*, No. 1:26-cv-205, Doc. 13, at 5 (E.D. Va. Feb. 18, 2026); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *Enoh v. Sessions*, No. 16-CV-85-LJV, 2017 WL 2080278 (W.D.N.Y. May 15, 2017); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders ….").

Other sessions of this Court have found that immediate release of the petitioner is the appropriate remedy where similar due process violations were implicated. *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 ("where a petitioner . . . is unlawfully determined to be a flight risk, courts have regularly ordered immediate release") (quoting *Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility et al.*, No. 26-11740-AK, 2026 WL 1453510, at *7 (D. Mass. May 22, 2026); *Olivar*, no. 1:26-cv-11102-ADB, Doc. No. 10; *Loja Loja v. Moniz*, No. 11826-MJJ, Doc. No. 10 at 6 (D. Mass. April 28, 2026) (finding that ordering a new bond hearing would be futile where the petitioner had already been denied bond without due process); *Mijango Velasco v. Wesling*, No. 26-11355-LTS, Doc. No. 19 (D. Mass. April 24, 2026) (ordering immediate release); *Li v. Wesling*, 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026) (same); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026) (same); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025) (same); *I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025) (same).

Federal courts generally do not have jurisdiction to review "discretionary judgment[s] regarding the application of" 8 U.S.C. § 1226. 8 U.S.C. § 1226(e). *See also Demore v. Kim*, 538 U.S. 510, 518–22 (2003). Notwithstanding 8 U.S.C. § 1226(e), federal courts may consider three

8

types of arguments. *Miti*, 2026 WL 884639 at *4. First, courts may consider habeas petitions arguing that a detainee's due process rights were violated. *See id.* ("The Court's task is therefore simply to ascertain whether the immigration court's discretion was exercised in a manner consistent with due process"); *Hernandez-Lara*, 10 F.4th at 28. Second, courts may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted). Third, courts may also consider petitions arguing that the type of evidence presented at a bond hearing "'could not – as a matter of law – have supported' the immigration judge's decision to deny bond." *Id*. at 143 (quoting *Hechavarria*, 358 F. at 240); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision.").

Here, Mr. Lopez Perez was denied a constitutionally compliant bond hearing because the IJ failed to allocate the proper burdens of proof, the IJ's exercise of discretion was arbitrary and capricious, and the IJ failed to meaningfully consider less restrictive alternatives to detention. This "is precisely the type of constitutional claim that belongs in federal court." *Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. 8 at 9 (D.R.I. Mar. 13, 2026); *see also Adegbenro v. Nessinger*, No. 1:26-cv-00110-MSM-AEM, Doc. No. 15, at 2 (D.R.I. Apr. 1, 2026) ("The Petitioner raises a constitutional due process challenge to the legal sufficiency of the evidence supporting his continued detention, not merely a disagreement with the IJ's discretionary weighing of the record.").

Administrative exhaustion is not required in this case. Mr. Lopez Perez is detained by Respondents, and every day in detention is a loss of liberty which causes him irreparable harm.

9

District courts have repeatedly held that administrative exhaustion is not required where the petitioner is actively detained in ICE custody. *See, e.g., Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15; *Miti*, 2026 WL 884639, at *5; *Adegbenro*, No. 1:26-cv-00110-MSM-AEM, at 2-3; *Costa,* 2026 WL 371198 at *3; *Romero v. Hyde*, 795 F. Supp. 3d 271, 280 (D. Mass. 2025). "This loss of liberty is further compounded due to the considerable amount of time—up to six months, in many cases—it takes for the BIA to decide bond appeals." *Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691 at *6 (D.R.I. Feb. 9, 2026); *see Miti*, 2026 WL 884639 at *5.

Additionally, an administrative appeal would be futile in this case, because the Board of Immigration Appeals ("BIA") asserts that all persons present in the U.S. without having been admitted or inspected are ineligible for bond under 8 U.S.C. § 1225(b)(2). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025); *see also Rosa Pineda v. Nessinger*, No. 1:25-CV-522-MSM-AEM, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025).

Moreover, the BIA lacks jurisdiction to adjudicate the constitutional claims raised by Petitioner, and any attempt to raise such claims before the agency would be futile. *See Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions").

Finally, a circuit court appeal of a BIA decision is not available for custody redetermination proceedings; thus "a petition for a writ of habeas corpus, filed in the appropriate district court, is the only mechanism by which a noncitizen may seek judicial review of an IJ's bond decision." *Mayancela v. FCI Berlin*, No. 25-cv-348-LM-TSM, 2025 WL 3215639, at *4 (D.N.H. Nov. 18, 2025) (citations omitted). Therefore, this Court has jurisdiction to review this Motion.

**B. Petitioner Should Be Released Because His Bond Hearing Did Not Comport with Due Process.**

  **1. The IJ did not properly allocate burdens of proof in compliance with *Hernandez-Lara*.**

In bond proceedings within the First Circuit, the government bears the burden to prove that an applicant poses a danger to the community by clear and convincing evidence or a flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 41; *see also Brito*, 22 F.4th at 246; *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021). Here, the government did not meet its burden on either prong. Nevertheless, the IJ unreasonably found that the Petitioner posed a flight risk by a preponderance of the evidence, such that no amount of bond could ameliorate his risk of flight. Exh. 1; Exh. 2.

The District Court has authority to enforce its decision when the Petitioner has demonstrated that the IJ has failed to properly allocate the burden of proof, either by pointing to the language of the IJ's order, or by showing that the evidence itself, as a matter of law, could not have supported the IJ's decision to deny bond *Diaz Ortiz*, 384 F.Supp.3d at 143 (citing *Hechavarria*, 358 F. at 240); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15; *Mayancela v. FCI Berlin*, No. 25-cv-348-LM-TSM, 2025 WL 3215639, at *5 (D.N.H. Nov. 18, 2025) ("Although the court may not review the IJ's discretionary judgment, the IJ does not have discretion to fail to apply the burden of proof that due process requires.") (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176 (D.D.C. 2015)); *Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255, at *3 (D. Mass. Apr. 14, 2020) ("[A] district court retains jurisdiction to review compliance with its earlier order conditionally granting habeas relief.") (quoting *Diaz Ortiz*, 384 F. Supp. 3d at 142); *see also Rosa v. Garland*, 114 F.4th 1, 14-15 (1st Cir. 2024) (finding court

has jurisdiction to review immigration agency decisions concerning whether it followed binding precedent). Here, the government did not meet this burden, and the IJ improperly denied bond despite the government's failure to demonstrate by a preponderance of the evidence that Mr. Lopez Perez poses a flight risk so high that no amount of bond could ameliorate his risk of flight.

First, the plain language of the IJ's written order denying bond does not clearly demonstrate whether the IJ properly allocated the burden of proof to the government; instead, it simply states, "the respondent is a flight risk by a preponderance of the evidence and there is no bond amount or alternative to detention that would ameliorate his risk of flight." Exh. 1, Bond Order. However, the application of legal standards requires more than just a statement; the legal standard must be meaningfully applied. *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025) ("Merely stating the proper standard does not discharge the obligation to correctly apply the standard"); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 (citing *Akinsanya* when an IJ did not properly allocate the burden when denying bond on flight risk). The IJ's written order is plainly deficient on its face. It contains no legal reasoning, application of the facts, or indication that the IJ meaningfully considered alternatives to detention. *Cf. Mijango-Velasco*, No. 26-11355-LTS, Doc. No.19 at 2.

In her oral decision, the IJ elaborated that she was denying bond because "the respondent tried to flee when officers tried to apprehend him." Exh. 2. However, the oral decision did not contain any detailed reasoning why Mr. Lopez Perez's evidence of substantial community ties, including his letters of support as well as his sworn affidavit, was not enough to establish his deeply rooted connections to the Chelsea community and his family, especially after they were admitted without objection. Exh. 2, 2:2-6; *see Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 ("The immigration judge's failure to consider probative evidence submitted by Petitioner and the

lack of same submitted by the government in their flight-risk determination "falls short of the evidentiary standards set forth in Hernandez-Lara.'"); *Loja Loja v. Moniz*, 1:26-cv-11826-MJJ, Doc. No. 10, at 6 (D. Mass. Apr. 28, 2026) ("An IJ may not simply ignore substantial testimonial and documentary proof, yet the IJ here appears not to have considered Petitioner's wife's testimony.") (quotations omitted). Her only nod to this evidence was to say that she had "reviewed" the evidence of community ties, length of stay, and availability of immigration relief, but she gave no indication of whether she assigned that evidence weight, or why its weight was insufficient in contrast to the narrative of the ICE encounter. Acknowledging that positive equities exist does not discharge the IJ of the obligation to meaningfully analyze its value under the burdens of proof. *See Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15.   Thus, the IJ's bond decision does not affirmatively indicate that the Immigration Judge properly allocated the burden of proof to the government, and in fact, the meaningful absence of reasoning in the language of the decision strongly indicates that only a cursory attempt was made to hold DHS to its proper burden.

Second, the evidence on the record, could not, as a matter of law, have supported the denial of bond. The standard of proof for a finding of flight risk is "preponderance of the evidence." *Hernandez-Lara*, 10 F.4th at 41. In *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993), the Supreme Court explained that the preponderance of the evidence standard requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before finding in favor of the party bearing the burden of proof. Significantly, "Before any such burden can be satisfied in the first instance, the factfinder must evaluate the raw evidence, finding it to be sufficiently reliable and sufficiently probative to demonstrate the truth of the asserted proposition with the requisite degree of certainty." *Id.*

13

Here, DHS submitted an I-213 record as their only piece of evidence. Exh. 5. Such evidence, as a matter of law, could not have supported the denial of bond. In the First Circuit, a law enforcement report cannot, as a matter of law, be afforded substantial weight in an IJ's analysis without further corroboration or a conviction. *See Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (holding that "the agency may not give 'substantial weight to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report'") (quoting *Matter of Arreguin*, 21 I. & N. Dec. 38, 42 (BIA 1995)). *See also Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 3; *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15. Nor can the agency broadly find that corroboration exists where the corroborating information is not named or identified. *See Maurice v. Bondi*, 154 F.4th 15, 21-22 (1st Cir. Oct 02, 2025).

In the context of a bond hearing, this Court has found that "[a]n IJ must determine that the facts in any police report it relies upon are both 'reliable and that its use would not be fundamentally unfair.'" *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 5 (quoting *Maurice,* 154 F.4th at 20). Where there is no indication that an IJ has done so, and where the facts in the law enforcement document are in dispute at the bond hearing, that document alone is insufficient to meet the government's burden of proof. *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 5. *See also I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025) (finding that the Government could not meet its burden of showing flight risk by a preponderance of the evidence where IJ relied only on a dismissed criminal charge and an unsubstantiated allegation of the petitioner's gang affiliation).

An I-213 narrative is ICE's equivalent of a police report, detailing ICE's own version of Mr. Lopez Perez's encounter with immigration agents and his subsequent arrest. *See* Exh. 5 at 2; *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 5 (noting that an I-213 is equivalent to a police

14

report authored by an immigration officer). Indeed, an I-213 is even less reliable than a police report, as it was written by an unnamed ICE officer who fails to state the source of their knowledge of the arrest. *See* Exh. 5. As such, the report is not necessarily a firsthand account of the encounter with Mr. Lopez Perez. Nevertheless, the IJ found Mr. Lopez Perez's I-213 to be an "inherently reliable government document" in the absence of duress or coercion, without any apparent analysis of its fundamental fairness or lack of corroboration. Exh. 2 at 4; *Cf. Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 5.

Further, the I-213 presented in this case contained no factual allegations that can be deemed "sufficiently probative" of flight risk. *Id.* At argument, DHS solely relied on a the portion of the narrative in which Mr. Lopez Perez allegedly attempted to exit his car via the passenger side door. Exh. 2. However, DHS failed to articulate how this actually indicated Mr. Lopez Perez's unwillingness to attend future immigration appointments. *Cf. Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15. Further, DHS failed to mention that Mr. Lopez Perez provided ICE officers with his correct identity, including his name, date of birth, and country of birth, immediately upon questioning. Exh. 5 at 2. Thus, DHS's evidentiary submission, consisting only of the form I-213, was not "sufficiently reliable and sufficiently probative." *See Loja*, 1:26-cv-11826-MJJ, Doc. No. 10, at 6 ("reliance on an I-213—without corroborating the facts it contains and in the face of contrary testimony from both Petitioner and his wife—does not satisfy the evidentiary burden required to deny bond"); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15.

Moreover, the allegation by DHS that Mr. Lopez Perez tried to "evade arrest by ICE agents" was disputed by Mr. Lopez Perez, through counsel, at his hearing, and that allegation has

15

not been otherwise corroborated by additional evidence. Exh. 2, Bond Hearing Transcript. Mr. Lopez Perez clearly submitted to extensive questioning from ICE officers based on the information contained in the I-213, which details that he accurately told ICE agents his identity, his place of birth, and his status in the United States. Exh. 5 at 2. Mr. Lopez Perez's alleged attempt to "evade" the agents could have resulted from their repeated use of another person's name, and their failure to provide him a language interpreter when giving instructions. Exh. 4, Tab A at 005. As such, the I-213 alone was insufficient as a matter of law to meet DHS's burden of demonstrating flight risk by a preponderance of the evidence.

Moreover, DHS presented nothing to discredit the voluminous evidence submitted by Mr. Lopez Perez in support of his application for bond. With respect to flight risk, "because the burden is on the government, the noncitizen need not prove a negative (by showing, for example, that he or she has not fled prosecution or failed to appear at court) but is instead faced with the more straightforward task of marshalling evidence readily available to her so as to rebut the government's evidence." *Hernandez-Lara*, 10 F.4th at 40 (quoting *Addington v. Texas*, 441 U.S. 418 (1979)) (emphasis added). Mr. Perez Lopez has fulfilled this responsibility. His evidence included a signed lease clearly stating his permanent address, evidence of his fixed employment, a sponsor letter from a U.S. citizen, a letter of support from his long-term partner that he resides with, the birth certificate of his U.S. citizen child, and six other letters of support from close friends, community members, and colleagues. Exh. 4, Tabs A-M.

The evidence submitted addressed multiple factors enumerated in the BIA's decision in *Matter of Guerra*, including demonstrating a fixed address, employment history, availability of immigration relief, length of residence, and family and community ties. 24 I&N Dec. 37, 40

16

(BIA 2006). At argument, DHS did not address or rebut any of this evidence. As such, DHS demonstrably failed to meet its burden of proving that Mr. Lopez Perez is a flight risk by a preponderance of the evidence that no amount of bond or alternative to detention could ameliorate.

An IJ errs where they do not conduct an individualized balancing test according to the factors articulated in *Guerra*. *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 at *7-9 (C.D. Cal. Mar. 5, 2026). Nevertheless, the IJ did just that and found DHS had met their burden without any meaningful analysis of the substantial evidence submitted by Mr. Lopez Perez, and thus violated Mr. Lopez Perez's due process rights. *See, e.g., I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 at *9 (D.R.I. Dec. 3, 2025); *Mendez Trigueros v. Guardian*, 1:26-cv-00205-AJT-WBP, Doc. 13 (E.D. Va. Feb. 18, 2026); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025)).

As stated, the IJ's only acknowledgement of Petitioner's positive equities was to mention that the Court had "reviewed" his community ties, length of stay, and availability of relief. Exh. 2 at 4. Such a cursory analysis without any mention of the weight afforded to such evidence is tantamount to the IJ ignoring such evidence. *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 (noting that merely citing the standard does not discharge an adjudicator of meaningfully applying it); *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 6 (citing *Garcia*, 2025 WL 3466312 at *1); *Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 6. *See Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 at *7-9 (C.D. Cal. Mar. 5, 2026) (finding an IJ errs where they do not conduct an individualized balancing test according to the factors

17

articulated in *Matter of Guerra*).

Thus, the evidence submitted by DHS against Mr. Lopez Perez was insufficient as a matter of law to support the IJ's conclusion, and the IJ's reliance on such evidence violated Mr. Lopez Perez's due process rights.

### 2. The IJ's exercise of discretion in denying bond was so arbitrary and capricious that it violated fundamental tenets of due process.

The District Court may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision.").

The BIA has recognized a non-exhaustive list of factors relevant to a bond determination, including whether the noncitizen has a fixed address in the U.S., length of residence and family ties in the United States, employment history, record of appearance in court, and criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). The IJ must consider all relevant factors in making a determination whether to grant bond; placing undue weight on one factor while failing to take others into account renders her decision arbitrary and violates due process. *See Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025).

The immigration judge's decision to deny bond based solely on Mr. Lopez Perez's uncorroborated attempt to exit through the passenger side of his vehicle during an ICE arrest was so lacking in evidentiary connection to current flight risk that it rendered the bond determination

arbitrary and capricious, and thus violated due process. *See Montesinos Olivar v. Hyde*, No. 1:26-cv-11102-ADB, Doc. No. 14 (D. Mass. May 7, 2026); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 (noting tenuous connection between evidence that IJ considered and the petitioner's actual risk of flight). A constitutionally-compliant bond hearing requires that the considerations relied upon to determine whether bond is warranted have a clear "evidentiary connection" to the determining criteria of danger to the community or flight risk. *Mendez Trigueros v. Guadian*, No. 1:26-cv-205, Doc. 13, at 5 (E.D. Va. Feb. 18, 2026). As the court explained in *Mendez Trigueros*, where "the considerations upon which it was determined that Petitioner constitutes a flight risk were so lacking in probative value as to that issue that their use in determining flight risk failed to provide the Petitioner with constitutionally sufficient due process," the Petitioner is entitled to a constitutionally-compliant bond hearing. *Id.* at 6–7.

Here, the Immigration Judge denied bond because the Petitioner allegedly fled when ICE attempted to arrest him. Although a previous attempt to evade authorities can be considered by an IJ while evaluating flight risk, this is only one factor out of nine to be weighed in this determination. *Guerra*, 24 I&N at 40. Mr. Lopez Perez provided extensive evidence demonstrating the many other factors that weigh in his favor, including a fixed permanent residence, his family connections, and steady employment. Exh. 4, Tabs A, D-I. As discussed previously, there was also insufficient evidence to demonstrate that Mr. Lopez Perez *did* attempt to flee law enforcement, as the I-213 provided by DHS is not enough to carry that burden. *See Loja*, 1:26-cv-11826-MJJ, Doc. No. 10, at 6; *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15.

Moreover, the IJ gave insufficient consideration to crucial evidence in favor of Mr. Lopez Perez. The IJ did not sufficiently weigh the written testimony of Mr. Lopez Perez's family and community members – including a U.S. citizen sponsor – who committed to supporting Mr.

Lopez Perez in attending all future immigration appointments. *See* Exh. 4, Tabs B, C, G, I-M. The IJ did not acknowledge Mr. Lopez Perez's fixed address, his history of employment, or the strength of his community and family ties to the Chelsea area. The IJ did not acknowledge that Mr. Lopez Perez has a two year old U.S. citizen son, and thus has every incentive to remain in Chelsea and attend future proceedings. *See* Exh. 4, Tab A at 005. The IJ did not acknowledge Petitioner's complete lack of criminal history as an indication of his regard for the law, or the fact that he was forthcoming with ICE when arrested. Further, as addressed fully below, the IJ gave no mention to why alternatives to detention would be insufficient to assure Mr. Lopez Perez's return to court.

In *Olivar*, a similarly situated petitioner was arrested by immigration authorities in Maine on a roofing job, while his fixed address was in New York. No. 1:26-cv-11102-ADB, Doc. No. 14. The IJ denied bond, because there was "contradictory evidence on the record. . . [to] show. . . where he will live and attend his hearing." *Id.* Another session of this Court concluded "the evidence in the record before the [IJ] could not, as a matter of law, have supported the [IJ]'s decision, which appears so arbitrary as to violate due process." *Id.* Similarly here, where the IJ "utterly failed to grapple with . . . the substantial body of evidence relevant to the bond determination presented by [Mr. Lopez Perez] and the government," *id.*, the IJ acted arbitrarily and capriciously.

Similarly, in *Vacas Espinoza*, the petitioner was ordered immediately released after being erroneously denied bond on flight risk grounds. *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15. There, another session of this Court concluded that the IJ had failed to consider probative evidence, failed to meaningfully grapple with evidence on the record, and relied on evidence that were not probative of flight risk. *Id.* As such, the Court found the bond denial to be arbitrary and

capricious and ordered the petitioner's immediate release. *Id.* Here, the petitioner has similarly been denied on tenuous grounds without meaningful consideration of substantial evidence to the contrary.

### 3. The IJ failed to consider alternatives to detention in her analysis of flight risk.

In denying bond, the IJ stated that no alternative to detention could ameliorate Petitioner's risk of flight without further explanation. Exh. 1; Exh. 2 at 4. District Courts have found that an IJ merely mentioning alternatives to detention being insufficient in their denial of bond, without explanation as to why, does not constitute meaningful consideration of such alternatives. *See Espinoza v. Maldonado*, No. 26-CV-01007, Doc. No. 28 at 6-7 (E.D.N.Y. 2026). *See also Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15; *Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 5-6; *Costa,* No. 25-CV-13469-AK, 2026 WL 371198; *Costa*, 2026 WL 371198; *Brito v. Barr*, 415 F. Supp. 3d 258, 267-71 (D. Mass. 2019), aff'd in part, vacated in part, 22 F.4th 240 (1st Cir. 2021); *Reid v. Donelan,* 390 F. Supp. 3d 201, 225 (D. Mass. 2019); *see also Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017) ("Is consideration of . . . possible alternative release conditions [] necessary to ensure that the conditions of their release will be reasonably related to the governmental interest in ensuring their appearance at future hearings? We conclude that the answer is yes."); *Hernandez-Aviles v. Decker*, No. 20 Civ. 7636, 2020 U.S. Dist. LEXIS 181925, at *7-8 (S.D.N.Y. Oct. 1, 2020) (holding that "not considering alternatives to detention or ability to pay a bond would run afoul of the protections afforded by the Due Process Clause" and that "if there is a viable option short of detention such that the Government's case for detention is no longer clear and convincing," the Fifth Amendment requires that it be considered before confinement is ordered).

Here, the IJ flatly states, "[Petitioner] is a flight risk by a preponderance of the evidence and there is no bond amount or alternative to detention that would ameliorate his risk of flight" without of mention of *why* a higher bond or alternative to detention could not mitigate Petitioner's flight risk. This is insufficient to constitute substantive consideration of such alternatives. *See Espinoza v. Maldonado*, No. 26-CV-01007 at 6-7 (E.D.N.Y. 2026). *Espinoza v. Maldonado*, No. 26-CV-01007, Doc. No. 28 at 6-7 (E.D.N.Y. 2026). *See also Olivar*, no. 1:26-cv-11102-ADB, Doc. No. 10 ("the immigration judge's statement that no bond would mitigate his risk of flight does not reflect meaningful consideration of alternatives to detention"). This is a stunning omission when due process generally mandates that loss of liberty be narrowly tailored even when protecting a proper governmental interest.

Courts recognize that alternatives to detention, such as GPS monitoring or check-ins, are proven to be highly effective in mitigating flight risk for noncitizens in immigration proceedings. *See, e.g., Hernandez*, 872 F.3d at 991 (recognizing that Intensive Supervision Appearance Program (ISAP) "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 1233883, at *12 (E.D. Cal. Apr. 29, 2025). Under BIA precedent, when an IJ finds an individual does not pose a danger, they should decide the amount of bond necessary to ensure the noncitizen's presence at future hearings and to ensure the noncitizen will report for removal if ordered to do so. *Matter of Urena*, 25 I&N Dec. 140 (BIA 2009).

Imposing continued civil detention, which may be prolonged indefinitely during Mr. Lopez Perez's removal proceedings, while failing to consider less restrictive alternatives to detention violates Mr. Lopez Perez's constitutional rights. Mr. Lopez Perez is currently detained at Plymouth County Correctional Facility, where he is subject to criminal conditions of

22

confinement, despite never having been convicted of a crime. *See Hernandez-Lara*, 10 F.4th at 28 ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes.") (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2nd Cir. 2020)). If a less restrictive alternative to detention is available, it must be meaningfully considered.

Although the First Circuit has not directly addressed this issue, the Court has referred favorably to the requirement that IJs address alternatives to detention in custody redetermination hearings. In *Hernandez-Lara*, the court cited favorably to the Ninth Circuit's holding that IJs must "consider a noncitizen's financial circumstances and alternative conditions of release during section 1226(a) bond hearings." *Hernandez-Lara*, 10 F.4th at 45 (citing *Hernandez*, 872 F.3d at 990–91). In *Doe v. Tompkins*, the First Circuit affirmed a district court order that required IJs to "consider alternative methods to ensure the safety of the community and [the petitioner's] future appearances like GPS monitoring," declining to disturb that portion of the ruling only because neither party raised it on appeal. *Doe v. Tompkins,* No. 18-12266, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), aff'd, 11 F.4th 1 (1st Cir. 2021).

In *Brito v. Garland*, the First Circuit, although vacating the district court decision on administrative exhaustion grounds, observed that "it is easy to see how conditions of release might shape an IJ's determination as to whether a noncitizen poses a flight risk or danger to the community," and "[i]f due process requires an IJ to consider alternatives to detention before making a determination about dangerousness or risk of flight, the IJs in the petitioners' cases might well have reached different decisions as to . . . whether to release the petitioners on bond." *Brito*, 22 F.4th at 254-55.

Accordingly, District Courts within the First Circuit have repeatedly found that an IJ's failure to consider alternatives to detention violates a noncitizen petitioner's due process rights. *See, e.g.*, *Costa*, 2026 WL 371198, at *3 (holding an IJ's "failure to consider whether alternatives to detention or other less restrictive means could address the risks of danger posed by Petitioner to the community was constitutionally deficient"); *Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. No. 8 at 16–18 (D.R.I. Mar. 13, 2026). In *Higiro*, the court explained that "[d]etention must bear a 'reasonable relation' to the purpose for which the individual is detained," and that two governmental interests legitimately advanced by immigration detention are (1) ensuring the noncitizen's appearance at future proceedings and (2) preventing danger to the community." *Id.* (quoting *Zadvydas*, 533 U.S. at 690). Thus, requiring an IJ to consider alternatives to detention "helps to ensure that detention is not arbitrarily imposed and that it bears a reasonable relation to the Government's interests." *Id.* Moreover, the IJ must "consider whether alternatives to detention are warranted *before* making any determination as to flight risk or dangerousness." *Higiro*, No. 26-cv-00105-JJM-AEM, at 18.

Here, the IJ did not fulfill this responsibility, and her failure to meaningfully consider alternatives to detention violated Mr. Lopez Perez's due process rights.

## IV.    CONCLUSION

WHEREFORE, Petitioner respectfully asks that the Court enforce its June 1, 2026 order and release him, as the government has not provided a bond hearing that complied with the requirements of the Court's order and the U.S. Constitution. In the alternative, Petitioner asks for the District Court, pursuant to its equitable powers, to release Mr. Lopez Perez on alternatives to detention such as GPS monitoring, hold its own bond hearing, or grant any other relief that the court sees fit.

24

Dated: June 18, 2026

Respectfully submitted,

*/s/ Daniela Hargus*
Daniela Hargus
BBO# 711041
PAIR Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(978) 502-7448; dhargus@pairproject.org

*Pro bono counsel for Petitioner*

## CERTIFICATE OF SERVICE

I, Daniela Hargus, hereby certify that this document filed through the ECF system will be sent electronically to the Respondents who are registered ECF participants as identified on the Notice of Electronic Filing (NEF).


Dated: June 18, 2026                                   */s/ Daniela Hargus*
                                                        Daniela Hargus