UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OLIVER ARMANDO LOPEZ PEREZ,                    *
                                               *
        Petitioner,                            *
                                               *
        v.                                     *
                                               *    Civil Action No. 1:26-cv-12268-IT
DAVID WESLING, U.S. Immigration and            *
Customs Enforcement, New England Field         *
Office Director, et al.,                       *
                                               *
        Respondents.                           *

MEMORANDUM & ORDER

August 6, 2026

TALWANI, D.J.

On June 1, 2026, the court granted Petitioner Oliver Armando Lopez Perez's petition for a writ of habeas corpus and ordered that he either be released from Immigration and Customs Enforcement ("ICE") custody or provided a constitutionally adequate bond hearing no later than June 8, 2026. Mem. & Order [Doc. No. 7]. On June 5, 2026, Immigration Judge ("IJ") Luciana Dubuc held a bond hearing and denied Petitioner bond, on the basis that his attempt to evade ICE officers during his May 15, 2026 arrest comprised sufficient evidence to find that Petitioner posed a flight risk. Resp.'s Status Rep. Ex. A (IJ decision) [Doc. No. 8-1].

Pending before the court is Petitioner's motion to enforce the court's order on his habeas petition and grant immediate release. Pet.'s Mot. to Enforce J. [Doc. No. 9]. As grounds, Petitioner argues that IJ Dubuc's determination violated his Fifth Amendment rights to due process because she improperly allocated the burden of proof to Petitioner, her decision was arbitrary and capricious, and that she failed to meaningfully consider alternatives to detention. Pet.'s Mem. ISO Mot. to Enforce J. at 9 [Doc. No. 10]. Respondents assert that Petitioner has failed to exhaust his administrative remedies by failing to appeal IJ Dubuc's bond denial to the

1

Board of Immigration Appeals (the "BIA") and that the IJ appropriately found that Petitioner

posed a flight risk. Resp.'s Opp'n 2–3 [Doc. No. 11].

As a threshold matter, this court has jurisdiction to determine whether IJ Dubuc held a

constitutionally adequate bond hearing, pursuant to the court's prior Order [Doc. No. 7].[1]

Petitioner need not exhaust his administrative remedies by pursuing an appeal of the IJ's bond

denial to the BIA where Petitioner asks this court not to substitute its judgment for that of the IJ,

but rather to determine whether the IJ's procedure was constitutionally defective.[2]

In Matter of Guerra, the BIA outlined the factors relevant to an IJ's determination of

whether a non-citizen poses a risk of flight. 24 I. & N. Dec. at 40 (BIA 2006). In the context of a

custody determination, an IJ may consider:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length
> of residence in the United States; (3) the alien's family ties in the United States,
> and whether they may entitle the alien to reside permanently in the United States in

[1] While the Immigration and Nationality Act prohibits courts from reviewing DHS' "discretionary judgment regarding the application of" 8 U.S.C. § 1226(a) and from "set[ting] aside any action or decision by [DHS] regarding the. . . denial of bond," 8 U.S.C. § 1226(e), an Article III tribunal nonetheless has jurisdiction to consider a non-citizen's challenge to the constitutionality of the procedures governing his detention. See Brito v. Garland, 22 F.4th 240, 253 (1st Cir. 2021); Hernandez-Lara v. Lyons, 10 F.4th 19, 34 (1st Cir. 2021).

[2] The court joins other district courts in this circuit in finding habeas jurisdiction to consider the constitutionality of an IJ's custody determination. See, e.g., Atariguana-Buele v. Warden, Plymouth Corr. Facility, No. 26-cv-12168-LTS, 2026 WL 1825934, at *2–3 (D. Mass. June 25, 2026) (finding IJ's decision that detainee posed danger to community was unsupported by clear and convincing evidence, as constitutionally required); Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility, No. 26-cv-11740-AK, 2026 WL 1453510, at *3 (D. Mass. May 22, 2026) (holding district courts "may assess the constitutionality of an IJ's custody determination."); Massingue v. Streeter, No. 19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (holding district courts may consider whether an IJ's bond hearing was in compliance with constitutionally mandated standards); Dos Reis v. Vitello, No. 25-cv-10497-RGS, 2025 WL 1043434, at *2 (D. Mass. Apr. 8, 2025) ("[A] court may intervene where an immigration bail determination is ultra vires or facially unconstitutional."); Miti v. Moniz, No. 26-cv-11327-BEM, 2026 WL 884639, at *1 (D. Mass. Mar. 31, 2026) ("District courts retain habeas jurisdiction to ensure that immigration bond hearings are conducted within constitutional bounds."); Garcia v. Hyde, 817 F. Supp. 3d 112, 123–24 (D.R.I. 2025) (holding district courts can assess constitutional adequacy of bond hearings).

the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Id.

The parties agree that the sole evidence upon which the IJ relied was the Form I-213, narrating Petitioner's arrest on May 15, 2026. Pet.'s Mem. Ex. E [Doc. No. 10-5]. That account details that ICE officers, seeking to apprehend a different individual, surrounded Petitioner's vehicle and ordered him to exit the car. Id. at 2. Petitioner "refused and attempted to evade [ICE] officers by attempting to exit the passenger side of the vehicle." Id. Then, ICE "officers were able to remove [Petitioner] from the vehicle and escort him to the ground while using the least amount of force necessary to effect the arrest." Id.

Petitioner did not dispute this account at the bond hearing, but added the additional context, through sworn affidavit, that he, "terrified and extremely confused," did not understand the ICE officers' English commands, and heard the officers call the name of a different individual—the person whom ICE was originally seeking to apprehend on May 15, 2026. Pet.'s Mem. Ex. 4 at 5 [Doc. No. 10-4]. In the same affidavit, Petitioner stated, and Respondents do not dispute, that Petitioner has no prior experience with either immigration or law enforcement, since he arrived in the United States in 2020. Id. Additionally, Petitioner offered substantial evidence demonstrating his deep-rooted ties to the community, including a letter from and background information regarding his Lawful Permanent Residence sponsor; a notarized letter from Petitioner's long-term partner and the mother of his child; a copy of his apartment lease, where he lives with his partner and child; his United States-born child's birth certificate; family photos;

3

a work licensing certificate; and letters of support from Petitioner's current and former employers and several friends in his local Massachusetts community. Id. at 8–43.

At the bond hearing, IJ Dubuc stated that "based on all the evidence and the totality of the circumstances the court will find that [Petitioner] is a flight risk by a preponderance of the evidence." Pet.'s Mem. Ex. B at ECF 4 [Doc. No. 10-2] ("Bond Hearing Tr."). Based on the Form I-213's account that Petitioner "tried to flee when officers tried to apprehend him, the court will find that there is no bond amount that will mitigate his risk of flight and there is no alternative to detention that would mitigate any risk of flight in this case." Id.

While the IJ stated that she "reviewed the evidence submitted by counsel: the community ties, the length of stay, the relief available to the respondent[, and Petitioner's] declaration," the bond hearing transcript, the authenticity and accuracy of which Respondents do not contest, excludes a meaningful consideration of the evidence submitted by Petitioner in support of the Guerra factors. Id. at ECF 3. IJ Dubuc did not analyze the significance of Petitioner's family, long-term lease, work history, connection to the community, or lack of criminal history. 24 I. & N. Dec. at 40. Instead, the IJ only analyzed Petitioner's reaction to the May 15, 2026 arrest, and, relying solely on that evidence, found that Petitioner more likely than not posed a flight risk. Bond Hearing Tr. at ECF 3–4 [Doc. No. 10-2]. Petitioner's reaction to his apprehension—mitigated by his sworn declaration that he was confused both by English commands and the officers' reference to another individual, and set against the weighty tranche of documents and sworn statements evincing Petitioner's strong connection to the community— cannot amount to a preponderance of the evidence that Petitioner poses a flight risk. See Elec. Order, Montesinos Olivar, No. 26-cv-11102-ADB (D. Mass. May 7, 2026) (Dkt. No. 14) (ordering immediate release following IJ's determination of flight risk where "the immigration

judge utterly failed to grapple with, or acknowledge in any way, the substantial body of evidence relevant to the bond determination presented by Petitioner and the government[.]").

Additionally, while IJ Dubuc stated that no alternative to detention could mitigate Petitioner's flight risk, she did not analyze any alternatives, such as potential conditions of release. Bond Hearing Tr. at ECF 4 [Doc. No. 10-2]; see Costa v. McDonald, No. 25-cv-13469-AK, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026) (ordering renewed bond hearing because "[t]he Immigration Judge's failure to consider whether alternatives to detention or other less restrictive means could address the risks of danger posed by Petitioner to the community was constitutionally deficient"). Accordingly, IJ Dubuc's failure to meaningfully consider the factors relevant to a flight risk determination and the availability of any alternatives to detention render Petitioner's June 5, 2026 bond hearing constitutionally inadequate. See, e.g., Mem. & Order, Slander Mourao v. Moniz, No. 26-11443-AK (D. Mass. June 25, 2026) (Dkt. No. 22).

Therefore, Petitioner's Motion to Enforce [Doc. No. 9] is GRANTED. Respondents are ORDERED to release Petitioner immediately, no later than 12:00 p.m. tomorrow, August 7, 2026. This order is without prejudice to Respondents requiring Petitioner to comply with reasonable conditions of supervision upon release, provided that such conditions are imposed, and written notice to Petitioner is provided, within seven days of this order. Respondents are ORDERED to file a status report within fourteen days of this order confirming their compliance with this order.

IT IS SO ORDERED.

August 6, 2026                                      /s/ Indira Talwani
                                                    United States District Judge